MICHAEL C. MARKHAM – Florida Bar No. 0768560
MikeM@jpfirm.com
ANGELINA LIM – Florida Bar No. 158313
angelinal@jpfirm.com
JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP
403 East Madison Street, Suite 400
Tampa, Florida 33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118

GREGORY J. HUGHES – CA Bar No. 071288
HUGHES LAW CORPORATION
3017 Douglas Blvd., Suite 300
Roseville, CA 95661
Telephone:  (916) 774-7506

General Counsel for
Chapter 11 Trustee, Gerard A. McHale, Jr.

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No. 12-35905 – C – 11 |
| SKY KING, INC., | Chapter 11 Proceeding |
| Debtor. | |

### DISCLOSURE STATEMENT FOR
### CHAPTER 11 TRUSTEE'S PLAN OF REORGANIZATION

**TO THE HONORABLE CHRISTOPHER M. KLEIN, U.S. CHIEF BANKRUPTCY JUDGE:**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 2

II.     NOTICE TO HOLDERS OF CLAIMS ...................................................................... 2

III.    EXPLANATION OF CHAPTER 11 .......................................................................... 6
        A.      Overview of Chapter 11........................................................................... 6
        B.      Plan of Reorganization............................................................................. 7

IV.     GENERAL INFORMATION ..................................................................................... 10
        A.      Debtor's Business Before Bankruptcy.................................................... 11
                1.      Ownership of the Debtor............................................................ 12
                2.      Sky King's Indebtedness............................................................ 12
                3.      Sky King's Assets. .................................................................... 12
                4.      Selected Financial Information .................................................. 13

V.      THE CHAPTER 11 CASE ......................................................................................... 14
        A.      Commencement of the Chapter 11 Cases ............................................... 14
        B.      Appointment of the Chapter 11 Trustee.................................................. 14
        C.      Appointment of the Committee ............................................................... 14
        D.      Case Administration................................................................................. 15
        E.      Significant Claims and Litigation ........................................................... 17

VI.     OVERVIEW OF THE PLAN ..................................................................................... 18
        A.      General..................................................................................................... 18
        B.      Summary of Classification and Treatment Under the Plan. .................... 18
                1.      Classified Claims/Interests Against the Debtor and
                        Treatment Under the Plan .......................................................... 19
                2.      Distributions to Classes of Creditors Pursuant to the Plan. ......... 21

VII.    SUMMARY OF THE PLAN....................................................................................... 24
        A.      Classification and Treatment of Claims and Equity Interests.................. 24
        B.      Conditions to Confirmation. ................................................................... 25
        C.      Conditions Precedent to the Effective Date under the Plan..................... 25
        D.      Executory Contracts and Unexpired Leases. .......................................... 26
        E.      Fractional Distributions. ......................................................................... 27
        F.      Provisions for Treatment of Contested Claims........................................ 27
        G.      Discharge. ............................................................................................... 29
        H.      Modification of the Plan. ........................................................................ 29
        I.      Revocation or Withdrawal of the Plan..................................................... 30
        J.      Vesting of Rights of Action. ................................................................... 30
        K.      Supplemental Documents. ....................................................................... 30
        L.      Retention of Jurisdiction. ........................................................................ 30

VIII.   CONFIRMATION AND CONSUMMATION PROCEDURE ........................... 34
        A.      Solicitation of Votes. ............................................................. 34
                1.      Classes 1-A, 1-B, 1-C, 4 and 5................................. 34
                2.      Classes 2-A and 2-B................................................. 34
                3.      Class 3..................................................................... 35
        B.      The Confirmation Hearing. ................................................... 36
        C.      Confirmation. ........................................................................ 37
                1.      Cramdown - Unfair Discrimination and Fair and Equitable ...........
                        Tests. ...................................................................... 38
                2.      Feasibility. .............................................................. 39
                3.      Best Interests of Creditors Test.................................. 39
        D.      Consummation. ...................................................................... 41

IX.     ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
        THE PLAN ...................................................................................... 42
        A.      Liquidation under Chapter 7. ................................................. 42
        B.      Alternative Plan of Reorganization.......................................... 42

X.      TAX CONSEQUENCES OF PLAN .................................................... 42

XI.     CONCLUSION AND RECOMMENDATION..................................... 43

1

1

## I.    **INTRODUCTION**

2     Gerard A. McHale as Chapter 11 Trustee (the "Trustee") of Sky King, Inc. (the

3 "Debtor") in the above-referenced chapter 11 case (the "Chapter 11 Case"), submits this

4 disclosure statement pursuant to section 1125 of title 11 of the United States Code (11

5 U.S.C. §§ 101 et seq., the "Bankruptcy Code") with respect to the Trustee's Plan of

6 Reorganization of even date (the "Disclosure Statement").  This Disclosure Statement is

7 to be used in connection with the solicitation of acceptances of the Trustee's Plan of

8 Reorganization dated August 7, 2014 (the "Plan"), filed with the United States

9 Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court").  A

10 copy of the Plan is attached hereto as **Exhibit "A."**  UNLESS OTHERWISE DEFINED

11 HEREIN, CAPITALIZED TERMS USED HEREIN HAVE THE SAME MEANINGS

12 ASCRIBED THERETO IN THE PLAN (*SEE* ARTICLE I OF THE PLAN ENTITLED

13 "DEFINITIONS AND INTERPRETATIONS").   THIS DISCLOSURE STATEMENT

14 DESCRIBES VARIOUS ASPECTS OF THE PLAN, BUT IS NOT A SUBSTITUTE

15 FOR THE PLAN AND ANY INCONSISTENT TERMS SHALL BE GOVERNED BY

16 THE TERMS OF THE PLAN.

17

## II.    **NOTICE TO HOLDERS OF CLAIMS**

18     The purpose of this Disclosure Statement is to enable you, as a creditor whose

19 Claim is impaired under the Plan, to make an informed decision in exercising your right

20 to vote to accept or reject the Plan.  *See* Article VIII, "Confirmation and Consummation

21 Procedure – Solicitation of Votes."

22

THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE VALUE OF ANY STOCK TO BE ISSUED UNDER THE PLAN) ARE AUTHORIZED BY THE TRUSTEE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE TRUSTEE, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE.

THE TRUSTEE'S PLAN, IF CONFIRMED, WILL BE A LEGALLY BINDING DOCUMENT. CREDITORS AND PARTIES IN INTEREST SHOULD CONSULT WITH COUNSEL TO DETERMINE WHAT EFFECT, IF ANY, THE TRUSTEE'S PLAN WILL HAVE ON THEM.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT. THE RECORDS KEPT BY THE DEBTOR HAVE NOT BEEN INDEPENDENTLY VERIFIED. THE INFORMATION CONTAINED IN THIS

**DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR.  THE TRUSTEE IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN TO BE WITHOUT ANY INACCURACY, ALTHOUGH EFFORT HAS BEEN MADE TO BE ACCURATE.**

On or about _____, 2014, the Bankruptcy Court entered an order pursuant to section 1125 of the Bankruptcy Code, <u>conditionally</u> approving this Disclosure Statement (the "Approval Order") as containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor typical of the solicited classes of Claims against the Debtor to make an informed judgment with respect to the acceptance or rejection of the Plan.  A true and correct copy of the Order is attached hereto as **<u>Exhibit "B,"</u>** and should be referred to for details regarding the procedures for the solicitation of votes on the Plan.

**CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.**

Each holder of a Claim entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting.  No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.  Except for the Trustee, and his professionals, no person has been authorized to use or promulgate any information concerning the Debtor,

4

its business or the Plan, other than the information contained in this Disclosure Statement. You should not rely on any information relating to the Debtor, its business or the Plan other than that contained in this Disclosure Statement and the Plan and the exhibits hereto and thereto. Unless stated otherwise, all defined terms have definitions in the Plan.

You may be bound by the Plan if it is accepted by the requisite holders of Claims, even if you do not vote to accept the Plan, *See* "Article VIII - Confirmation and Consummation Procedure – Solicitation of Votes; Confirmation – Acceptance."

**TO BE SURE YOUR BALLOT IS COUNTED, YOUR BALLOT MUST BE ACTUALLY RECEIVED NO LATER THAN _____, 2014.** For a general description of the voting instructions and the name, address and phone number of the person you may contact if you have questions regarding the voting procedures, *see* "Confirmation and Consummation Procedures - Solicitation of Votes."

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing") on _____ __, 2014 at _____ _.m." Prevailing Pacific Time, in the United States Bankruptcy Court, Eastern District of California, Sacramento, California. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before _____ __, 2014 at _____ _.m., Prevailing Pacific Time, in the manner described under the caption "Article VIII - Confirmation and Consummation Procedure - The Confirmation Hearing."

# III.    EXPLANATION OF CHAPTER 11

**A.    Overview of Chapter 11.**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Generally in Chapter 11, a debtor in possession attempts to reorganize its business for the benefit of the debtor, its creditors and other parties in interest; however Chapter 11 may also be used to conduct an orderly liquidation of the debtor's business and assets for the benefit of creditors.  This case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 31, 2012 (the "Petition Date").

The commencement of a Chapter 11 case creates an estate comprised of all the legal and equitable interests of the debtor in property as of the date the petition is filed. Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee.  In the present Case, the Bankruptcy Court has appointed a Chapter 11 Trustee. *See* Article V, "The Chapter 11 Case — Appointment of the Chapter 11 Trustee and Case Administration."

The filing of a Chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code.  Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts to collect or recover prepetition claims from the debtor or to otherwise interfere with, or exercise control over, the debtor's property or business.  Except as otherwise ordered by the Bankruptcy Court, the automatic stay

remains in full force and effect until the effective date of a confirmed plan of reorganization.  The Plan provides that the automatic stay shall remain in full force and effect at all times until the closing of this case.

The formulation of a plan of reorganization is the principal purpose of a Chapter 11 case.  The plan sets forth the means for satisfying claims against and interests in the Debtor.  Since a Chapter 11 Trustee has been appointed, any party may propose a plan of reorganization.

**B.** **Plan of Reorganization.**

Although referred to as a plan of reorganization, a plan may provide for anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets.  In either event, upon confirmation of the plan, it becomes binding on all of the creditors and equity holders, and the obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan.

After a plan of reorganization has been filed, the holders of impaired claims against and interests in a debtor are permitted to vote to accept or reject the plan, provided such holders are to receive distributions under the plan.  Before soliciting acceptances to the proposed plan, section 1125 of the Bankruptcy Code requires the preparation of a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan.  This Disclosure Statement is presented to holders of Claims

against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the solicitation of votes on the Plan.

If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may confirm the plan if the court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. *See* Article VIII "Confirmation and Consummation Procedure." Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" of creditors test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims or equity interests under a plan is not less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization. With the exception of approval of the Plan by all impaired classes, the Trustee believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors test and the feasibility requirement.

Chapter 11 does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization in order for the bankruptcy court to determine that the class has accepted the plan. *See* Article VIII, "Confirmation and Consummation Procedure - Solicitation of Votes." Rather, a class of claims will be

determined to have accepted the plan if the court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class. Holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.

Classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. *See* Article VIII, "Confirmation and Consummation Procedure - Solicitation of Votes." Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are altered. Altered for purposes of determining impairment, however, does not include curing defaults and reinstating maturity or payment in full in cash on the effective date of the plan. In addition, classes of claims or equity interests that will not receive or retain any property under a plan of reorganization are presumed to have rejected the plan and thus are also not entitled to vote. Claims in Class 4 (Equity Interests) will not retain or receive any property under the Plan and thus, are deemed to have rejected the Plan and are not entitled to vote.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all classes of impaired claims and equity interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or equity interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to

each impaired class of claims or equity interests that has not accepted the plan.  *See* Article VIII "Confirmation and Consummation Procedure."

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class.

## IV.    GENERAL INFORMATION

The discussion below briefly describes the current status of this bankruptcy case and the Debtor.  Typically, a disclosure statement might include a lengthy historical analysis of the Debtor.  In this case, such an analysis is not necessary as the primary purpose of the plan is to recover some value from the Debtor's FAA license.  Under applicably non-bankruptcy law, an FAA license (like the one held by the Debtor in this

1   case) may not be sold under Section 363 of the Bankruptcy Code or in the context of a

2   chapter 7 liquidation.  An FAA license may only be transferred through a transfer of

3   ownership of the equity of the debtor.  The proposed plan contemplates a cancellation of

4   the current equity interests in the Debtor and a reissuance of equity interests in the

5   reorganized debtor to effectuate an indirect transfer of the FAA license and the recovery

6   of some value for the Debtor's FAA license.  Time is of the essence to get this

7   accomplished as the Debtor has not been operating since January 26, 2014, and

8   administrative expenses continue to accrue.

9   **A.      Debtor's Business Before Bankruptcy**

10      The Debtor began its operations in 1990, under the management of Gregg

11  Luckenbill, providing private jet chartering service with one jet to the Sacramento Kings

12  basketball team, other sports teams, entertainment groups and major corporate

13  executives.  In 2009 the Debtor suffered from a decrease in sales as a result of the

14  recession, causing great difficulty in payment of operating expenses.  In March 2010, the

15  Debtor filed a chapter 11 case before this Court, Case number 10-25657-C-11.  After a

16  post-petition transfer of the stock and a change in management, a plan of reorganization

17  in the first bankruptcy case was confirmed in June 2011 under new management led by

18  TMC Avion, Inc.  Subsequently, the Debtor, through a fleet of as many as eight (8)

19  aircraft, provided general passenger chartering with scheduled routes out of east coast

20  airports to the Caribbean, Guam and other east coast destinations.  Unfortunately, the

21  confirmation of the bankruptcy plan in the first case failed to cure the Debtor's financial

1  woes.  Shortly after the confirmation of the first bankruptcy filing, the Debtor struggled

2  financially and filed this bankruptcy petition on August 31, 2012.

3            **1.**      **Ownership of the Debtor**

4  At the Petition Date, Sky King was owned 100% by TMC Avion, Inc.  During the

5  chapter 11 case, a dispute appears to have arisen relating to the ownership of the Debtor.

6  In connection with a DIP lending motion relating to Trans Ocean Airlines, Inc. ("Trans

7  Ocean"), it has been suggested that 50% of the equity of the Debtor was purchased by or

8  transferred to Trans Ocean.  The outcome of this dispute is irrelevant given the

9  appointment of the Chapter 11 Trustee and the fact that the equity in the Debtor appears

10  to be worthless.

11            **2.**      **Sky King's Indebtedness**

12  As of the Petition Date, the Debtor's Schedules reflect secured debt in the amount

13  of $3,558,462, priority debt in the amount of $744,884, and unsecured debt in the amount

14  of $16,587,451.  The Claims Register reflects total claims in excess of $84.4 million,

15  secured claim in excess of $2.2 million and priority claims in excess of $9.3 million.

16  Administrative expense claims incurred after the Petition Date and prior to the Trustee's

17  appointment total in excess of $5.9 million.

18            **3.**      **Sky King's Assets.**

19  As of the Petition Date, the Debtor's Schedules reflect personal property assets in

20  the amount of $2,944,561.  This figure appears to be grossly overstated.  The Bankruptcy

21  Court has approved AerSale, Inc. ("AerSale"), or its assigns as the successful bidder for

22  the stock of the Reorganized Debtor by order dated June 16, 2014.  The highest bid for

1   the Debtor's business was only $500,000 from AerSale because the value of the business

2   tied to its C.F.R. 121 FAA Certificate, significantly decreased upon the Debtor's

3   cessation of its operations.  The $500,000 is being held in escrow by the Trustee's

4   counsel.  As detailed in the stock purchase agreement between AerSale and the Trustee

5   (that is attached to the Plan), the closing of this transaction hinges upon the successful

6   confirmation of a plan.

7        Additionally, from the Trustee's review thus far, the Debtor has $839,406 in an

8   account and a receivable from the U.S. Postal Service in the approximate amount of $1.0

9   million that is disputed and that is currently the subject of an investigation by the

10  government.  There may be affiliates that are technically owned by the Debtor which are

11  not subject to the AerSale / AerLine Stock Purchase Agreement but Trustee has not

12  uncovered any equity as yet.  There also may be causes of action which may yield

13  recoveries for the Plan Administrator.

14              **4.    <u>Selected Financial Information</u>**

15       The Debtor had ceased its operation when the Trustee was appointed.  Thus, there

16  are no meaningful figures for its operations post-appointment of the Trustee.  Attached as

17  **<u>Exhibit "C"</u>** is certain of the Debtor's Financial Information -- the monthly operating

18  reports filed by the Trustee in this case.  Pre-appointment of the Trustee, the Debtor's

19  records were housed in Los Angeles and its accounting staff was also located there.

20  However, the Debtor operated out of locations in Florida -- Lakeland and Miami.  The

21  Debtor had no meaningful accounting staff in either of its two locations from which it

22  operated.  Consequently, there were lapses in communication regarding its books and

records from its operational locations to the Los Angeles accounting department. The

Trustee believes that there were systematic problems associated with the Debtor's

accounting system. A reconciliation or audit of its books and records had not been

performed for a significant period of time. Accordingly, at this time, the Trustee is

unable to verify the accuracy of the Debtor's reported figures with any certainty.

## V.    THE CHAPTER 11 CASE

**A.    Commencement of the Chapter 11 Cases**

On August 31, 2012, the Debtor filed a voluntary petition under Chapter 11. The

Debtor continued its operations and attempted several times during this case to

unsuccessfully to sell its business. The Debtor ceased operations on January 26, 2014.

**B.    Appointment of the Chapter 11 Trustee**

On February 14, 2014, the Court ordered the appointment of a chapter 11 trustee.

The Order approving the appointment of Gerard A. McHale, Jr., as the chapter 11 trustee

was entered on February 18, 2014.

**C.    Appointment of the Committee**

On September 26, 2012, the office of the United States Trustee appointed

an Official Committee of Unsecured Creditors. The Committee consists of Anderton

Limited, a subsidiary of Triton Aviation; Aergo Leasing 111 Limited; and AerSale

23440, LLC, AerSale 23441, LLC, and AerSale 25417, LLC, subsidiaries of AerSale,

Inc.

**D.    Case Administration**

       **1.    Bar Date – Filed Claims.**

**The bar date for filing claims was established as January 2, 2013.  The Claims Register in the case reflects secured claims in the amount of $2,278,871, priority claims in the amount of $9,330,461, and total claims of $84,379,972.**

       **2.    Administrative Claims.**

Administrative priority claims are of major concern in this case.  The last monthly operating report filed by the Debtor reflects post-petition liabilities in the amount of $4,348,811 and past due post-petition account payables (over 30 days) in the amount of $1,131,820.

The administrative claims bar date was March 31, 2014 for Pre-Trustee Administrative Claims incurred prior to February 18, 2014, as fixed by the Bankruptcy Court's Order dated March 4, 2014.  The Trustee served a notice of administrative claims bar date on or about March 7, 2014.  In response, the Trustee received administrative claims totaling over $5.9 million.

       **3.    Post-Petition DIP Lending Motions and Orders.**

During the chapter 11 case, the Debtor filed two separate motions to approve DIP financing under Section 364 of the Bankruptcy Code – one relating to Trans Ocean Airline, Inc. ("TOA-Carson") and one relating to Songbird Acquisitions, LLC ("Songbird").

On February 8, 2013, the Debtor filed an emergency motion for DIP financing (Doc. 271) from TOA-Carson pursuant to a letter of intent ("LOI") attached to Allen

McAnally's declaration (Doc. 274).  Pursuant to the motion and LOI, TOA-Carson was to provide DIP financing (initially $300,000) up to $1.5 million.  The Court entered an interim order on February 19, 2013, that authorized up to $750,000 between the date of the order and final hearing on February 27, 2013.  According to Civil Minutes on the docket (Doc. 293), the Court conducted a hearing on March 5, 2013 and "granted" the motion.  However, no final order was ever entered.  The Civil Minutes reflect that the order was to be submitted by Debtor's counsel, Robert Opera.  The Debtor's March 2013 monthly operating report ("MOR") reflects "funds from Shareholders, Partners, or Other Insiders" in the amount of $300,000.  The MOR does not reveal where the funds came from, but the Trustee has been advised that the Debtor received a series of wire transfers from Steve Schilling, allegedly an individual retired pilot, not an officer of TOA-Carson in amounts of $5,000, $10,000 and $15,000 that relate to this purported DIP loan.   It does not appear that any loan documents were ever executed.  The LOI attached to the motion indicates that the Definitive Agreement was to be prepared by February 8, 2013.  The proposed financing was part of an overall transaction whereby the DIP loan would be converted to equity at confirmation of a plan.  TOA-Carson did not provide the additional DIP financing contemplated in the LOI and interim order.   In connection with the Songbird DIP filings discussed below, the Debtor has expressly disputed the TOA-Carson DIP loan.  Given the absence of a final order and TOA-Carson's defaults under the LOI, this does not appear to be a valid DIP loan supported by a priority lien.  Instead, it looks like is a disputed post-petition purchase of equity (or an equity infusion).

1    On November 11, 2013, the Debtor filed an emergency motion for DIP financing

2    (Doc. 544) from Songbird pursuant to an LOI dated November 5, 2013 (Doc. 547).

3    Pursuant to the Motion and LOI, Songbird was to provide DIP financing (initially

4    $800,000) up to $2 million.  The Court entered an interim order on December 7, 2013,

5    that authorized the DIP loan.  The final hearing (scheduled for January 8, 2014) has never

6    occurred and no final order has been entered.  The Trustee has been advised that

7    $100,000 was funded under the auspices of this interim order by Frank Visconti and

8    Danny Looney (via Attorney Bevan's trust account).  This does not appear to be a valid

9    DIP loan with any priority.  The Trustee has also been advised that Songbird walked from

10    its DIP loan because of the disputed TOA-Carson DIP loan.

11    The Trustee has filed a motion to vacate the interim orders authorizing these

12    purported DIP loans.  Such motion is pending.

13    **E.    Significant Claims and Litigation**

14    **At this point in time, it is difficult for the Trustee to provide a detailed**

15    **analysis of any claims or causes of action in favor of the estate.  Given the overall**

16    **circumstances surrounding the Debtor and events occurring during this case,**

17    **including the precipitous shutdown of the Debtor's operations, the Trustee believes**

18    **that claims do exist.**

19    **The failure to specifically identify any claim or cause of action against any**

20    **third party, including any insiders of the Debtor, should not be construed as a**

21    **waiver or estoppel of any such claims.  Any and all litigation claims of any kind shall**

1  be preserved for the benefit of creditors in this case and are intended to be so

2  preserved through the Plan.

3          **VI.**      **OVERVIEW OF THE PLAN**

4  **A.**     **General.**

5        The Plan provides for the payment of creditors through the issuance and sale of

6  the New Common Stock of the Reorganized Debtor to AerLine pursuant to the Stock

7  Purchase Agreement and liquidation of the Post-Confirmation Assets that will remain in

8  the Estate after the Effective Date of the Plan. The Plan designates nine (9) classes of

9  Claims against and Equity Interests in the Debtor as follows Secured Claim of TOA-

10  Carson, Secured Claim of Songbird, Other Secured Claims, Post-Trustee Administration

11  Claims, Pre-Trustee Administrative Claims, Priority Claims, Unsecured Claims, Insider

12  Claims and Equity Interests.

13  **B.**     **Summary of Classification and Treatment Under the Plan.**

14        The following table provides a summary of the classification and treatment under

15  the Plan of all Claims and Equity Interests and is intended only to highlight information

16  contained elsewhere in this Disclosure Statement. The summary is qualified in its

17  entirety by the more detailed information in the Plan, exhibits to the Plan, the Exhibits

18  hereto, and any other documents referenced herein. Reference should be made to the

19  entire Disclosure Statement and to the Plan for a complete description of the

20  classification and treatment of Claims and Equity Interests.

21

22

### 1.    Classified Claims/Interests Against the Debtor and Treatment Under the Plan

**Class 1-A**
Secured Claim of TOA-Carson

**Impaired.**
TOA-Carson will receive $125,000 from the Purchase Price, plus an Allowed super-priority Administrative Claim in the amount of $125,000, subordinate only to the fees and expenses of the Trustee and the Plan Administrator and their professionals.

**Class 1-B**
Secured Claim of Songbird

**Impaired**
Songbird or the true holders of this claim shall waive any distribution from the Purchase Price and consent to a surcharge of any lien in favor of the Trustee. Any claim will be treated as a general unsecured claim in Class 4.

**Class 1-C**
Other Secured Claims

**Impaired**
Creditors in this class, if any, will receive no distribution from the Purchase Price and be treated as general unsecured creditors in Class 4.

**Class 2-A**
Post-Trustee Administrative

**Impaired**
These claimants will receive the Pro Rata Share of two hundred fifty thousand ($250,000) from the Purchase Price and will otherwise receive a Pro Rata Share of the proceeds from the liquidation of all of the Post-Confirmation Assets by the Plan Administrator after payment of Post-Confirmation Administrative Claims. The Post-Confirmation Administrative Claims will be paid upon final applications and orders approving the same. If the Post-Confirmation Administrative Claims total less than $225,000, the balance will be transferred to the Plan Administrator. The failure of any particular holder of an Administrative Claim in Class 2-A to object to the Plan or file a rejection ballot for the Plan shall constitute agreement by such holder to the treatment of such Administrative Claim as provided herein, which treatment is different from the treatment provided for such Administrative Claim in Section 1129(a)(9)(A) of the Bankruptcy

| | | |
|---|---|---|
| 1 | | Code. |
| 2 | **Class 2-B** | **Impaired** |
| | Pre-Trustee Administrative | These claimants will receive a Pro Rata Share of |
| 3 | | $100,000 from the Purchase Price and otherwise |
| | | receive a Pro Rata Share of the proceeds from the |
| 4 | | liquidation of all of the Post-Confirmation Assets |
| | | by the Plan Administrator after payment of Post- |
| 5 | | Confirmation Administrative Claims and Post- |
| | | Trustee Administrative Claims.  The failure of |
| 6 | | any particular holder of an Administrative Claim in |
| | | Class 2-B to object to the Plan or file a rejection |
| 7 | | ballot for the Plan shall constitute agreement by |
| | | such holder to the treatment of such Administrative |
| 8 | | Claim as provided herein, which treatment is |
| | | different from the treatment provided for such |
| 9 | | Administrative Claim in Section 1129(a)(9)(A) of |
| | | the Bankruptcy Code. |
| 10 | | |
| | **Class 3** | **Impaired** |
| 11 | Priority Claims | These claimants will receive a Pro Rata Share of |
| | | $50,000 from the Purchase Price and otherwise |
| 12 | | receive a Pro Rata Share of the proceeds from the |
| | | liquidation of all of the Post-Confirmation Assets |
| 13 | | by the Plan Administrator after payment of Post |
| | | Confirmation Administrative Claims, Post-Trustee |
| 14 | | Administrative Claims and Pre-Trustee |
| | | Administrative Claims.  The failure of any |
| 15 | | particular holder of a Priority Claim in Class 3, |
| | | including without limitation the holder of any Tax |
| 16 | | Claim, to object to the Plan or file a rejection ballot |
| | | for the Plan shall constitute agreement by such |
| 17 | | holder to the treatment of such Priority Claim as |
| | | provided herein, which treatment is different from |
| 18 | | the treatment provided for such Priority Claim in |
| | | Section 1129(a)(9)(B), (C) or (D) of the Bankruptcy |
| 19 | | Code, as applicable to such Claim.. |
| 20 | **Class 4** | **Impaired.** |
| | Unsecured Claims | Each holder of an Allowed Unsecured Claim in |
| 21 | | Class 4 shall receive a Pro Rata Share of any |
| | | remaining proceeds from the liquidation of all of the |
| 22 | | Post-Confirmation Assets by the Plan Administrator, after payment of Post-Confirmation |

20

|  | Administrative Claims and all Allowed Claims in Classes 1-A, 2-A, 2-B and 3. |
|--|--|
| **Class 5**<br>Insiders | **Impaired**<br>Each holder of an Allowed Insider Claim in Class 5 shall receive a Pro Rata Share of all funds remaining, if any, after the payment in full of Allowed Unsecured Claims in Class 4. |
| **Class 6**<br>Equity Interests | **Impaired**<br>On the Effective Date, all existing Equity Interests shall be terminated and effectively cancelled and such holder shall receive nothing on account of its Equity Interest.  New Equity Interests in the Reorganized Debtor shall be issued pursuant to the Stock Purchase Agreement. |

## 2.    Distributions to Classes of Creditors Pursuant to the Plan.

Upon Confirmation and the occurrence of the Effective Date, the stock of Reorganized Debtor will be transferred to AerLine, Inc. pursuant to the Stock Purchase Agreement.  The estate will no longer be called "Sky King, Inc.", but be called "Post Confirmation OSK".

The Post-Confirmation Administration will be established to accept the Post-Confirmation Assets and shall be funded with $150,000 from the bankruptcy estate.  The Trustee shall be appointed Plan Administrator under the Plan.

The Plan provides that the Stock Purchase Agreement contemplated shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment under section 1146(a) of the Bankruptcy Code.  The offering, issuance, and distribution of the New Common Stock (as defined in the Stock Purchase Agreement) pursuant to the Plan shall also be exempt pursuant to section 1145 of the Bankruptcy Code from the registration requirements of section 5 of the Securities

1   Act and from any state or local law requiring registration for offer or sale of a security or

2   registration or licensing of an issuer of a security.

3            On the Effective Date, Assets of the estate of the Debtor (other than the <u>Post-</u>

4   <u>Confirmation Assets</u>) shall vest in the Reorganized Debtor, free and clear of all Liens,

5   Clams, charges, or other encumbrances whatsoever.  On and after the Effective Date,

6   except as otherwise provided in the Plan, the Reorganized Debtor may operate its

7   business and use, acquire, or dispose of property without supervision or approval by the

8   Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy

9   Rules.  The Reorganized Debtor shall be entitled to use the name trade name "Sky King"

10  and the name of the case shall be converted to "Post Confirmation OSK."

11           The Plan provides that the Plan Administrator shall make all Distributions

12  required under the Plan.  Except as otherwise provided in the Plan, any Distribution to be

13  made pursuant to the Plan shall be deemed to have been timely made if made within

14  twenty (20) days after the time therefor specified in the Plan.  Whenever any Distribution

15  to be made under the Plan shall be due on a day other than a Business Day, such

16  Distribution shall instead be made, without interest, on the immediately succeeding

17  Business Day, but shall be deemed to have been made on the date due.  For federal

18  income tax purposes, a Distribution will be allocated to the principal amount of a Claim

19  first and then, to the extent the Distribution exceeds the principal amount of the Claim, to

20  the portion of the Claim representing accrued but unpaid interest.

21           Pursuant to the Plan, all Cash necessary for the Plan Administrator to make

22  payments and Distributions shall be obtained from the liquidation of the Post-

Confirmation Assets in the Post-Confirmation Plan Administration.  The Plan provides that $150,000 of the Debtor's assets will be set aside to defray the costs of post-confirmation administrative expense claims - - such as the costs of the distributions, the reconciliation of claims, the costs for additional discovery to prosecute the Debtor's claims and all such related post-confirmation items.

No Distribution of less than fifteen dollars ($15.00) shall be made by the Plan Administrator to the holder of any Claim unless a request therefor is made in writing to the Plan Administrator.  Furthermore, checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Plan Administrator by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before ninety (90) days from the date of the issuance of such check.  If no claim is made as provided in the preceding sentence, all Claims in respect of void checks shall be discharged and forever barred and such unclaimed Distributions or payments shall revert to the Post-Confirmation Plan Administration.

Following confirmation of the Plan, the Plan will become effective (as such term is used in section 1129 of the Bankruptcy Code) on a date selected by the Trustee which is after the first Business Day (but not later than 20 days after) on which the conditions precedent to the effectiveness of the Plan specified in Section 12.2 of the Plan have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day after the dissolution, lifting, or expiration of such stay.

A payment on account of a Contested Claim will be made only when, and to the extent that, such Contested Claim becomes Allowed.  All payments to be made in Cash under the Plan will be made by check drawn on a domestic bank or wire transfer from a domestic bank.  No Cash in fractions of cents will be paid.  All fractional cents shall be rounded to the nearest whole cent (with any amount equal to or less than .5 to be rounded down).

## VII.    SUMMARY OF THE PLAN

The Trustee believes that the chapter 11 process has enabled the Trustee to maximize the value of the Estate by allowing the Trustee to obtain value for the Debtor's otherwise non-transferable FAA certificate.  As a result of the chapter 11 process and through the Plan, the Trustee expects that creditors will obtain a substantially greater recovery from the Estate than the recovery that would be available if the Assets had been liquidated under chapter 7 of the Bankruptcy Code.  The Plan is annexed hereto as **Exhibit "___"** and forms a part of this Disclosure Statement.  The summary of the Plan set forth below is qualified in its entirety by the more detailed provisions set forth in the Plan.

**A.    Classification and Treatment of Claims and Equity Interests.**

If the Plan is confirmed by the Bankruptcy Court, each holder of an Allowed Claim or Equity Interest in a particular class will receive the same treatment as the other holders in the same class of Claims or Equity Interests, whether or not such holder voted to accept the Plan.  Moreover, upon confirmation, the Plan will be binding on all of the Debtor's creditors and stockholders whether or not such creditors or stockholders voted

to accept the Plan.  Such treatment will be in full satisfaction, release and discharge of and in exchange for such holder's respective Claims or Equity Interests, except as otherwise provided in the Plan.

**B.**      **Conditions to Confirmation.**

The Plan will not be confirmed, and the Confirmation Order will not be entered, until and unless a certain specified "Confirmation Condition" has been satisfied or waived by the Debtor.  This Confirmation Conditions are as follows:

> The Clerk of the Bankruptcy Court shall have entered an order or orders, which may be the Confirmation Order, approving the Plan Documents, authorizing the Trustee to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents.

**C.**      **Conditions Precedent to the Effective Date under the Plan.**

The "effective date of the plan," as used in section 1129 of the Bankruptcy Code, will not occur, and the Plan will be of no force and effect, until the Effective Date.  The "Effective Date" will occur on the date on which the following conditions have been satisfied or waived:

> The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction, and the Transaction (as defined in the Stock Purchase Agreement) shall have been closed in accordance with the terms of the Stock Purchase Agreement.

The occurrence of any of these conditions precedent may be waived or modified upon agreement by the Trustee and AerSale / AerLine.   If the Trustee decides that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition has not

1   been waived, then either the Trustee will file a notice of failure of Effective Date with the

2   Bankruptcy Court, at which time the Plan and the Confirmation Order will be deemed

3   null and void.

4   **D.        Executory Contracts and Unexpired Leases.**

5          The Bankruptcy Code gives the Trustee the power, subject to the approval of the

6   Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  If an

7   executory contract or unexpired lease is rejected, the other party to the agreement may

8   file a claim for damages incurred by reason of the rejection.  In the case of rejection of

9   leases of real property, such damage claims are subject to certain limitations imposed by

10  the Bankruptcy Code.

11         Any executory contracts or unexpired leases of the Debtor that (a) have not been

12  approved by the Bankruptcy Court prior to the Confirmation Date for assumption and

13  assignment or rejected by the Trustee, and (b) are not the subject of pending motions to

14  assume or reject on the Confirmation Date, shall be deemed to have been rejected by the

15  Trustee.  The Plan shall constitute a motion to reject such executory contracts and

16  unexpired leases, and the Estate shall have no liability thereunder except as is specifically

17  provided in the Plan.  Entry of the Confirmation Order by the Clerk of the Bankruptcy

18  Court shall constitute approval of such rejections pursuant to section 365(a) of the

19  Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected

20  executory contract or unexpired lease is burdensome, and that the rejection thereof is in

21  the best interest of the Debtor, the Estate, and all parties in interest in the Case.  Claims

22  created by the rejection, expiration, or termination of executory contracts and unexpired

leases must be filed and served (i) in the case of an executory contract or unexpired lease rejected prior to the Confirmation Date, in accordance with the Bar Date Notice or the respective Order authorizing such rejection, or (ii) in the case of an executory contract or unexpired lease that (a) was terminated or expired by its terms prior to the Confirmation Date or (b) is deemed rejected pursuant to Section 10.01 of the Plan, no later than thirty (30) days after the Confirmation Date.  The Trustee does not currently anticipate on any assumption of executory contracts.

The lease by and between Sky King Airlines, Inc., and Webster Business Park, LLC, which is the subject of an action for possession pending in the Miami-Dade County (Case No. 14-4630) has been terminated by mutual agreement. For the sake of clarity, this lease is deemed rejected under the Plan.

**E.**     **Fractional Distributions.**

Notwithstanding anything to the contrary contained herein, no cash payments of fractions of cents will be made.  Fractional cents shall be rounded to the nearest whole cent (with any amount of .5 cent or less to be rounded down).

**F.**     **Provisions for Treatment of Contested Claims.**

The Trustee or the Plan Administrator may object to the allowance of Claims filed by the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 11.03 of the Plan.  Unless otherwise ordered by the Bankruptcy Court, all objections to Claims are required to be

1    served and filed not later than one hundred and twenty (120) days after the Effective

2    Date.

3          Under Article XI of the Plan, from and after the Effective Date, all Claims against

4    the Estate and all claims by the Estate against any entity may be compromised and settled

5    according to the following procedures:

6          1.    The following settlements or compromises do not require the review or

7    approval of the Bankruptcy Court or any other party in interest pursuant to the Court's

8    Order dated June 16, 2014 (Doc. No. 801) as well as the following:

9          a.    The settlement or compromise of a Claim pursuant to which such

10    Claim is Allowed in an amount of $50,000 or less; and

11          b.    The settlement or compromise of a Claim where the difference

12    between the Claim listed on the Schedules and the amount of the Claim proposed to be

13    Allowed under the Settlement is $50,000 or less; and

14          2.    The following settlements or compromises shall be submitted to the

15    Bankruptcy Court for approval:

16          a.    Any settlement or compromise not described in subsection "1."

17    above; and

18          b.    Any settlement or compromise of a Claim that involves an

19    "insider," as defined in section 101(31) of the Bankruptcy Code.

20          If a Contested Claim becomes Allowed, whether by a Final Order or by a

21    compromise and settlement, the holder of such Contested Claim will receive the

22    Distributions to which such holder is then entitled under the Plan.  No interest will be

1   paid on account of Contested Claims that later become Allowed, except to the extent that

2   payment of interest is required under section 506(b) of the Bankruptcy Code, and no

3   Distribution will be made by the Plan Administrator with respect to all or any portion of

4   any Contested Claim pending the entire resolution of such Claim.

5   **G.      Discharge.**

6          The rights afforded in the Plan and the treatment of all Claims and Equity

7   Interests herein shall be in exchange for and in complete satisfaction, discharge, and

8   release of all Claims and interests as provided in Section 8.1 of the Plan.

9   **H.      Modification of the Plan.**

10         Modification of the Plan may be proposed in writing by the Trustee at any time

11  before confirmation, provided that the Plan, as modified, meets the requirements of

12  sections 1122 and 1123 of the Bankruptcy Code, and the Trustee has complied with

13  section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after

14  confirmation and before substantial consummation, provided that the Plan, as modified,

15  meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the

16  Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under

17  section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.

18  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have

19  accepted or rejected, as the case may be, such plan as modified, unless, within the time

20  fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**I.**     **Revocation or Withdrawal of the Plan.**

The Trustee reserves the right to revoke and withdraw the Plan prior to the occurrence of the Effective Date.  If the Plan is revoked or withdrawn, or if the Effective Date does not occur, then, the Plan and all settlements set forth in the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against or equity interests in the Debtor or to prejudice in any manner the rights of any Person in any other further cases involving the Debtor or the Debtor's Estate.

**J.**     **Vesting of Rights of Action.**

Under sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, a debtor in possession or trustee has certain powers to recover money or other assets for the benefit of the debtor's estate, eliminate security interests in estate property, or eliminate debt incurred by the estate.  Under the Plan, all Causes of Action and proceedings under the avoiding power provisions shall be vested in the Plan Administrator.

**K.**     **Supplemental Documents.**

All appendices and exhibits to the Plan and the Plan Documents are incorporated into the Plan by reference and are part of the Plan as if set forth in full therein.

**L.**     **Retention of Jurisdiction.**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and Bankruptcy Rule 9027, the Bankruptcy Court shall retain and shall have the broadest jurisdiction over any and all matters related to this Case or in any way effecting the liquidation, including

any issue, matter or proceeding (a) arising under the Bankruptcy Code, (b) arising in or related to the Case or the Plan, (c) relating to property of the Estate, Causes of Action, or Assigned Causes of Action, (d) relating to Insiders, or (e) that relates to or has any effect upon any of the following:

      1.     To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article X hereof for the rejection of executory contracts or unexpired leases to which any of the Debtor is a party, or with respect to which the Debtor may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination of any executory contract or unexpired lease;

      2.     To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Plan Administrator after the Effective Date, including, without express or implied limitation, any application to the Bankruptcy Court relating to any proceedings to avoid or recover any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the creditors;

      3.     To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

      4.     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

5.      To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

6.      To hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

7.      To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan (and all documents, instruments, agreements, schedules, and exhibits thereto) or their interpretation, implementation, enforcement, or consummation;

8.      To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

9.      To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against the Estate;

10.     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

11.     To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Plan Administrator, Trustee, or the

Estate may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12.     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Trustee or Plan Administrator or any Person;

13.     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action in favor of the Estate (including Avoidance Actions) commenced by the Trustee before, or the Plan Administrator after the Effective Date, including any and all issues relating to insurance coverage or proceeds;

14.     To enter an order or final decree closing the Case;

15.     To determine such other issues or matters and for such other purposes as may be provided in the Confirmation Order;

16.     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

17. To hear and determine any disputes as it pertains to the Plan Administration or Plan Administrator and

18     To hear and determine any other issues or matters related hereto and not inconsistent with the Bankruptcy Code.

Confirmation of this Plan shall not be construed so as to narrow or limit the jurisdiction of the Bankruptcy Court in any way.

**VIII.   CONFIRMATION AND CONSUMMATION PROCEDURE**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

**A.      Solicitation of Votes.**

All Claims in the Classes are impaired.  Any Creditor holding a Claim in an impaired class under the Plan may vote on the Plan so long as such Claim has not been disallowed and is not the subject of an objection pending,  Nevertheless, if a Claim is the subject of such an objection, the holder thereof may vote if, prior to the Voting Deadline _____, 2014 at 4:00 p.m., Prevailing Pacific Time), such holder obtains an order of the Bankruptcy Court, or the Bankruptcy Court approves a stipulation between the Debtor and such holder, fully or partially allowing such Claim, whether for all purposes or for voting purposes only.

**1.      Classes 1-A, 1-B, 1-C, 4 and 5**

With respect to the classes of non-priority claims entitled to vote on the Plan in this case (Classes 1-A, 1-B, 1-C, 4 and 5), the Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class that have timely voted to accept or reject a plan.

**2.      Classes 2-A and 2-B**

With respect to the Administrative Claims in Classes 2-A and 2-B under the Plan, each holder of a particular Claim in such classes must agree to the treatment of such Claim as provided in the Plan.  The failure of any holder of any particular Administrative

Claim to object to the Plan or file a rejection ballot for the Plan shall constitute agreement by such holder to the treatment of such Administrative Claim as provided in the Plan, which treatment is different from the treatment that would otherwise be required for such Administrative Claim under the provisions of Section 1129(a)(9)(A) of the Bankruptcy Code.

### 3.    Class 3.

With respect to the other Priority Claims in Class 3 under the Plan, including Tax Claims, each  holder of a particular Claim in such class must agree to the treatment of such Claim as provided in the Plan.  The failure of any holder of any particular Priority Claim to object to the Plan or file a rejection ballot for the  Plan shall constitute agreement by such holder to the treatment of such Priority Claim as provided in the Plan, which treatment is different from the treatment that would otherwise be required for such Priority Claim under the provisions of Section 1129(a)(9)(B), (C) or (D) of the Bankruptcy Code, as applicable to such Claim.

The Voting Procedures provide that, with respect to the tabulation of ballots for all Claims, the amount to be used to tabulate acceptance or rejection of the Plan is as follows (in order of priority): (i) if prior to the Voting Deadline, the Bankruptcy Court enters an order or approves a stipulation between the Trustee and the Creditor fully or partially allowing a Claim, whether for all purposes or for voting purposes only, the amount allowed thereunder; (ii) the liquidated amount specified in a proof of claim filed on or before the Voting Deadline so long as such proof of claim has not been disallowed by the Bankruptcy Court and is not the subject of an objection pending; (iii) the Claim

amount listed in the Schedules (as amended) as liquidated, undisputed, and not contingent; and (iv) if a proof of claim has been filed on or before the Voting Deadline, and such Claim is wholly contingent or unliquidated, the Claim amount, for voting purposes only, will be $1.00 so long as such proof of claim has not been disallowed by the Bankruptcy Court and is not the subject of an objection pending as of the Voting Record Date, subject to reconsideration by such creditor prior to confirmation of the Plan.

A ballot will *not* be counted if a Claim has been disallowed or an objection is pending to the Claim as of the Voting Record Date, and the Creditor has not obtained, on or before the Voting Deadline, a Bankruptcy Court order allowing such Claim, either in whole or in part, for all purposes or for voting purposes only. **A BALLOT WILL NOT BE COUNTED IF IT IS NOT *ACTUALLY RECEIVED* BY _____ _____ BY THE VOTING DEADLINE — 4:00 P.M., PREVAILING PACIFIC TIME, ON _____, 2014. PLEASE FOLLOW THE INSTRUCTIONS ON YOUR BALLOT FOR RETURNING THE BALLOT**. In addition, a vote maybe disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**If you have any questions about these instructions, please call Angelina Lim, Esq. at (813) 225-2500.**

**B.        The Confirmation Hearing.**

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. The Confirmation Hearing in respect of the Plan has been

scheduled for _____, 2014, at __:__.m., Prevailing Pacific Time, before the United States Bankruptcy Court in Sacramento, California.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

Any objection to confirmation must be made in writing and must specify in detail the name and address of the objector, all grounds of the objection, and the amount and class of the Claim or number of shares of Debtor's stock held by the objector.  Any such objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, counsel to the Trustee, and all other persons having filed notices of appearance in the Chapter 11 Cases on or before _____ __, 2004 at 4:00 p.m., Prevailing Pacific Time.   Objections to continuation of the Plan are governed by Bankruptcy Rule 9014.

**C.      Confirmation.**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for continuation of the Plan are that the Plan is (i) accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible, and (iii) in the "best interests" of creditors and stockholders that are impaired under the Plan.

**1.** **Cramdown - Unfair Discrimination and Fair and Equitable Tests.**

To obtain nonconsensual confirmation of the Plan, at least one impaired class must vote to accept the Plan (excluding any votes of insiders), and the Trustee must demonstrate to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting class.  The Bankruptcy Code provides the following non- exclusive definition of the phrase "fair and equitable," as it applies to secured creditors, unsecured creditors, and equity holders:

a.    Secured Creditors.

Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds is provided in clause (i) or (ii) of this subparagraph.

b.    Unsecured Creditors.

Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the rejecting class of unsecured creditors will not receive or retain any property under the plan.

c. <u>Equity Interests.</u>

Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest, or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

## 2. **Feasibility.**

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. Allowed Administrative Claims and Allowed Priority Claims will be paid in full on the Effective Date or as soon thereafter as is practicable. Distributions to the holders of Allowed Secured Claims and Allowed Unsecured Claims will be made on the Distribution Date.

## 3. **Best Interests of Creditors Test.**

With respect to each impaired class of Claims and Equity Interests, confirmation of the Plan requires that each holder of a Claim or Equity Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement is referred to as the "best interests test." To determine what holders of Claims and Equity Interests of each impaired class would receive if the Debtor were liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of chapter 7 liquidation

1    cases.  The cash amount that would be available for satisfaction of Claims (other than

2    Secured Claims) and Equity Interests would consist of the proceeds resulting from the

3    disposition of the unencumbered assets of the Estate, augmented by the unencumbered

4    cash held by the Trustee at the time of the commencement of the liquidation cases.  Such

5    cash amount would be reduced by the amount of the costs and expenses of the liquidation

6    and by such additional administrative and priority claims that may result from the use of

7    chapter 7 for the purposes of liquidation.

8        The cost of liquidation under chapter 7 would include the fees payable to a trustee

9    in bankruptcy, as well as those that might be payable to attorneys and other professionals

10   that such a trustee may engage.  The foregoing types of claims and other claims that may

11   arise in a liquidation case or result from the pending Chapter 11 Case, including any

12   unpaid expenses incurred by the Trustee during the Chapter 11 Case, such as

13   compensation for attorneys, financial advisers, and accountants, would be paid in full

14   from the liquidation proceeds before the balance of those proceeds would be made

15   available to pay prepetition Claims.

16       To determine if the Plan is in the best interests of each impaired class, the present

17   value of the distributions from the proceeds of the liquidation of the Estate's

18   unencumbered assets and properties are compared with the value of the property offered

19   to such classes of Claims and Equity Interests under the Plan.

20       After considering the effects that chapter 7 liquidations would have on the

21   ultimate proceeds available for distribution to creditors in the Chapter 11 Case, including

22   (i) the increased costs and expenses of liquidations under chapter 7 arising from fees

1  payable to trustees in bankruptcy and professional advisers to such trustees, (ii) the

2  erosion in value of assets in chapter 7 cases in the context of the expeditious liquidation

3  required under a chapter 7 case and (iii) the substantial increases in Claims that would be

4  satisfied on a priority basis or on a parity with creditors in the Chapter 11 Case, the

5  Trustee has determined that confirmation of the Plan will provide each holder of an

6  Allowed Claim or Equity Interest with a recovery that is not less than such holder would

7  receive pursuant to liquidation of the Estate under chapter 7 of the Bankruptcy Code.

8      This case is unique in that only through a plan of reorganization can the value of

9  the Debtor's FAA certificate be realized.  If the plan is not confirmed, the creditors will

10  not be able to realize the $500,000 from AerSale.  A liquidation analysis is attached

11  hereto as **Exhibit "D"** and by reference incorporated herein.

12      THE   TRUSTEE   BELIEVES   THAT   THE   CONFIRMATION   AND

13  IMPLEMENTATION OF THE PLAN IS PREFERABLE TO THE CHAPTER 7

14  LIQUIDATION ALTERNATIVE BECAUSE THE PLAN SHOULD PROVIDE

15  GREATER RECOVERIES THAN THOSE AVAILABLE IN A CHAPTER 7

16  LIQUIDATION.

17  **D.**   **Consummation.**

18      The Plan will be consummated on the Effective Date.  For a more detailed

19  discussion of the conditions precedent to the Plan and the impact of the failure to meet

20  such conditions, see "Summary of the Plan - Conditions to Confirmation, and Conditions

21  Precedent to the Effective Date under the Plan."

22      The Plan is to be implemented pursuant to the provisions of the Bankruptcy Code.

1

## IX.    ALTERNATIVES TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

2

3        If the Plan is not confirmed and consummated, the alternatives include (i)

4    liquidation of the Estate under chapter 7 of the Bankruptcy Code and (ii) the preparation

5    and presentation of an alternative plan of reorganization.

6    **A.    Liquidation under Chapter 7.**

7        If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to

8    cases under chapter 7 of the Bankruptcy Code in which a Chapter 7 trustee would be

9    elected or appointed to liquidate the assets of the Debtor.  As previously mentioned, the

10    primary difference in Chapter 7 is that no value will be obtained from the Debtor's FAA

11    license.

12    **B.    Alternative Plan of Reorganization.**

13        If the Plan is not confirmed, the Trustee or any other party in interest could

14    attempt to formulate a different plan of reorganization.  Such a plan might involve either

15    a reorganization and continuation of the Debtor's business or an orderly liquidation of

16    their assets.  The Trustee believes that the Plan enables creditors to realize the highest

17    recoveries under the circumstances.

18    ## X.    TAX CONSEQUENCES OF PLAN

19        The Trustee is unable to assess the tax consequences of the Plan with respect to

20    equity security holders and each party in interest is referred to their respective tax

21    advisors with respect to their individual tax consequences with respect to the Plan.

1

## XI.    CONCLUSION AND RECOMMENDATION

2

The Trustee urges holders of impaired Claims to vote to accept the Plan.

3

Dated:  August 6, 2014

4

Respectfully submitted,

5

GERARD A. MCHALE, JR.
AS CHAPTER 11 TRUSTEE

6

/s/ Gerard A. McHale, Jr.

7

**JOHNSON POPE BOKOR RUPPEL & BURNS LLP**

8

MICHAEL C. MARKHAM (FBN:  0768560)
ANGELINA E. LIM (FBN:  0158313)

9

403 E. Madison St.
Tampa, FL 33602

10

ATTORNEYS FOR GERARD A. MCHALE, JR., AS CHAPTER 11 TRUSTEE

11

12

13

14

15

16

17

18

19

20

21

22

1740910_2

43